330 So.2d 338 (1976)
ROGER JOHNSON CONSTRUCTION CO., INC., Plaintiff-Appellant,
v.
BOSSIER CITY, Defendant-Appellee.
No. 12802.
Court of Appeal of Louisiana, Second Circuit.
January 6, 1976.
Rehearing Denied February 9, 1976.
*339 Cady & Beard by Roy L. Beard, Shreveport, for plaintiff-appellant.
Graham W. Rogers, Bossier City, for defendant-appellee.
Before BOLIN, MARVIN and GLADNEY, JJ.
En Banc. Rehearing Denied February 9, 1976.
GLADNEY, Judge.
Roger Johnson Construction Company, Inc. on December 22, 1972 contracted with the city of Bossier City for the construction of certain recreational facilities involving three sites or areas: Meadowview-Swan Lake Area, Greenacres and Walbrook Park Area.
It was provided the contract should be completed within 140 days after "Notice to Proceed" given by the Engineer. Such notice was given December 27, 1972 and directed plaintiff to commence work on January 22, 1973. Later the contract was amended by extensions granted on May 15, 1973 and June 18, 1973 which extended the construction period from 140 to 200 days. The contract was substantially completed and accepted on August 31, 1973. The city has deducted $50 per day for 45 days beyond the specified 200 calendar days required for completion.
Plaintiff, contending the delays were caused by unforeseeable reasons beyond its control, such as acts of God, severe weather, etc., instituted the present suit to recover the $2,250 withheld. The district judge rejected plaintiff's demands and it appeals.
The parties through stipulation agreed that the construction was not completed within the 200 day period but was completed after an additional 45 days. The parties agreed "that time is of the essence of each and every portion of this contract and of the specifications wherein a definite and certain length of time is fixed for the performance of any act whatsoever; and where under the contract an additional time is allowed for the completion of any work, the new time limit fixed by such extension shall be of the essence of this contract."
The contract set forth conditions wherein liquidated damages shall not be assessed, stating:

"* * * Provided, that the Contractor shall not be charged with liquidated damages or any excess cost when the Owner determines that the Contractor is without fault and the Contractor's *340 reasons for the time extension are acceptable to the Owner; Provided further, that the Contractor shall not be charged with liquidated damages or any excess cost when the delay in completion of the work is due:
(a) To any preference, priority or allocation order duly issued by the Government;
(b) To unforeseeable cause beyond the control and without the fault or negligence of the Contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the Owner, acts of another Contractor in the performance of a contract with the Owner, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and severe weather; and
(c) To any delays of Subcontractors or suppliers occasioned by any of the causes specified in subsections (a) and (b) of this article;

"Provided further, that the Contractor shall, within ten (10) days from the beginning of such delay, unless the Owner shall grant a further period of time prior to the date of final settlement of the contract, notify the Owner, in writing, of the causes of the delay, who shall ascertain the facts and extent of the delay and notify the Contractor within a reasonable time of its decision in the matter . . ."
The preceding paragraph requiring notice to the owner is inapplicable since extensions were informally given by the owner.
The primary issue presented by this appeal is whether appellant has demonstrated by a preponderance of the evidence there was lawful excuse for its nonperformance due to "severe weather."
The contract contains no definition of "severe weather". Ernest Ethridge, officer in charge of the Shreveport office of the National Weather Service, testified the term is used in his records to mean "thunderstorms" or "tornadic activity" and that during the period from January through August, 1973 there were only five days of "severe weather". Manifestly, such usage has special significance without application herein. Our Civil Code declares the words of a contract are to be understood in the common and usual signification, without attending so much to grammatical rules as to general and popular use. C.C. Arts. 1946, 1953. It is obvious that usage intended by the parties herein involved implies bad weather which by reason of atmospheric conditions such weather is not reasonably fit or proper to permit the performance of the undertaking contemplated.
To establish its contention the delays were due to unforeseeable reasons beyond its control, and particularly because of severe weather conditions, the contractor pointed out that the impact of weather conditions on the progress of the work went beyond mere interference by falling rain as the water content or wet condition of the soil would not permit the laying of asphalt, or the doing of preliminary soil preparations. Roger Johnson testified that he visited the job sites regularly and that he was personally acquainted with the progress or lack of progress of the work. He gave as his reasons for delay the inability to get compaction of the sub-grade because it was wet. He said particular emphasis should be given to the declarations in Change Orders No. 1 and No. 2 whereby the calendar days of construction were increased "due to unusually wet weather conditions." Dewey Johnson was likewise of the opinion the work was prevented because of weather conditions. David Isabell, a subcontractor who came on the job about the middle of May at the Swan Lake Area and Walbrook Park Area sites, testified he was "supposed to take it at rough grade and fine grade it out and put the base and the asphalt on it." His work commenced on the Swan Lake tract *341 on May 14 and was completed about July 3; Walbrook Park was started on July 10 and finished about August 8-31. He said he didn't work constantly because rains would delay soil tests, but a fair amount of the delay was due to wet weather.
The appellant placed primary reliance as to the climatic issue on Ernest Ethridge, officer in charge of the Shreveport office of the National Weather Service. The data derived from Ethridge's testimony concerning rainfall is as follows:

 NORMAL ACTUAL DEVIATION
MONTH RAINFALL RAINFALL FROM NORM
Jan. 4.04 5.65 +.85
Feb. 3.71 1.52 -2.57
March 4.10 5.01 +.86
April 5.19 6.44 +1.87
May 5.04 2.00 -2.79
June 3.34 5.84 +2.50
July 2.89 7.63 +3.88
Aug. 2.68 .77 -1.78
 _____ _____
 30.99 +2.82

An analysis of the data supplied by appellant's witness thus indicates that over the entire eight month period, January through August, 1973 there was a "plus departure" of 2.82 inches. The total normal rainfall for the period is 30.99 inches.
Mike Vercher, the inspector on the job, testified his log disclosed that there were only thirty-eight (38) days during the entire period of the contract when the contractor was unable to proceed with the work.
Albert Bergamini, a civil engineer, was the project engineer on the Bossier City job. He testified that from the inspection report he tabulated the days when it was too wet to work. He also totaled thirty-eight days lost to wet weather from January 23 to July 16. He expressed the opinion the job could have been completed in the one hundred and forty days contemplated by the contract. Mike Vercher concluded that the cause for the delay was lack of sufficient personnel and that on most occasions work was progressing on one site only, although there were three sites requiring work.
The opinion of the trial judge held that the preponderance of the evidence showed that this job could have been timely completed by plaintiff by using sufficient crews on all sites on the days during which work could have progressed. Plaintiff's demands were denied.
We have reached the same conclusion and the judgment will be affirmed.